FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS & ST. JOHN

|  |  |
|---|---|
| )<br>)<br>JEFFREY J. PROSSER, DAWN    )<br>PROSSER, SYBIL G. PROSSER,   )<br>JUSTIN PROSSER, MICHELLE     )<br>LABENNETT, and LYNDON A.     )<br>PROSSER,                     )<br>                             )<br>          Appellants,        )<br>                             )<br>     v.                      )<br>                             )<br>STAN SPRINGEL,               )<br>                             )<br>          Appellee.          )<br>                             )<br>_____ ) | Civil No. 2008-16<br>          2008-18<br><br>Re: Bankr. No. 07-30012<br>Adv. Proc. No. 07-03010 |

APPEARANCES:

**Karin A. Bentz, Esq.**
St. Thomas, U.S.V.I.
    *For Dawn Prosser,*

**Alan E Pedersen, Esq.**
Omaha, NE
    *For Justin Prosser, Sybil G. Prosser, Michelle LaBennett,*
    *and Lyndon A. Prosser,*

**Mark W. Eckard, Esq.**
St. Croix, U.S.V.I.
    *For Jeffrey J. Prosser,*

**Andrew Kamensky, Esq.**
Miami, FL
    *For Stan Springel.*

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 2

## <u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

Before the Court are the appeals of Dawn Prosser, Lyndon A.
Prosser, Justin, Prosser, Sybil G.Prosser, Michelle LaBennett
(the "Prossers") from the Bankruptcy Division's December 11,
2007, order for a preliminary injunction.

### I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Jeffrey J. Prosser was an officer and director of Innovative
Communication Corporation ("Innovative"), a management and
holding company that owns all of the common stock of various
subsidiaries that provide telephone, newspaper, cable television,
internet, and other media-related services in the United States
Virgin Islands and elsewhere.  Jeffrey Prosser was also an
officer, director, and sole member of Innovative Communication
Company, LLC ("ICC-LLC"), the ultimate parent company of
Innovative.

On July 31, 2006, Jeffrey Prosser filed a voluntary petition
pursuant to Chapter 11 of the United States Bankruptcy Code, 11
U.S.C. §§ 1101, *et seq.* ("Chapter 11"). *See In re: Prosser,*
Bankr. No. 06-30009.  The Bankruptcy Division converted that
matter to a liquidation pursuant to Chapter 7 of the United
States Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.* ("Chapter 7").
James P. Carroll ("Carroll") was appointed as the Chapter 7

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 3

trustee of the bankruptcy estate of Jeffrey Prosser ("the Prosser Estate") and continues to serve in that capacity.[1]

On July 5, 2007, Greenlight Capital Qualified, LP, Greenlight Capital, LP, and Greenlight Capital Offshore, Ltd, (collectively, the "Greenlight Entities") filed an involuntary Chapter 11 petition against Innovative. *See In re: Innovative Communication Corporation,* Bankr. No. 07-30012.  An order for relief in that case was entered on September 21, 2007.  On October 4, 2007, Stan Springel ("Springel") (together with Carroll, the "Trustees") was appointed as trustee for the bankruptcy estate of Innovative (the "Innovative Estate," together with the Prosser Estate, the "Estates").

On October 19, 2007, Springel commenced an adversary proceeding (the "Turnover Action") against Dawn Prosser, Jeffrey Prosser, and their children, Justin Prosser, Michael J. Prosser, Sybil G. Prosser, Michelle LaBennett, and Lyndon A. Prosser in the Bankruptcy Division.  Springel's verified complaint seeks to: (1) compel the Prossers to assemble and deliver to Springel all personal property in the possession, custody, or control of the Prossers that was acquired with Innovative funds; (2) direct the Prossers to provide an inventory and accounting of that property;

---

[1] Carroll was appointed Chapter 7 trustee after John Ellis ("Ellis"), the initial trustee, resigned from that position on October 31, 2007.

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 4

(3) compel the Prossers to safeguard and protect the property
pending its delivery to Springel; and (4) to disallow any claims
of the Prossers against Innovative pending the assembly and
delivery of the property.  Along with the verified complaint,
Springel filed a motion for a temporary restraining order and for
preliminary and permanent injunctive relief.

The Bankruptcy Division issued a temporary restraining order
on October 30, 2007.  That order directed the Prossers, *inter
alia,* to provide an inventory and accounting of the property, and
compelled the Prossers to insure, safeguard, and protect the
property pending delivery to Springel.  On November 26, 2007, the
Bankruptcy Division entered an order extending the temporary
restraining order until December 15, 2007.

On December 7, 2007, the Trustees filed an amended complaint
requesting similar relief, but with respect to both Estates.

 After an evidentiary hearing conducted on December 11,
2007, the Bankruptcy Division entered an order granting the
preliminary injunction.  In that order, the Bankruptcy Division
determined that one or more of the Prossers possessed or
controlled over $9,000,000 of property acquired with Innovative
funds (the "Property").  That preliminary injunction order
directed the Prossers to provide the Trustees with a complete and
detailed inventory of the Property, to the extent they had not

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 5

previously done so.  It also directed the Prossers to safeguard

the Property, and prohibited them from spending, consuming,

damaging, disposing of, sequestering, absconding with, secreting,

or transferring the Property without written approval from both

of the Trustees.  Additionally, the December 11, 2007, order

scheduled the trial on the merits to commence in June, 2008.

Thereafter, Dawn Prosser filed two motions to modify the

preliminary injunction to carve out certain items of Property so

that she could sell them.  At a hearing held on February 1, 2008,

the Bankruptcy Division denied the motions to modify.

On December 21, 2007 the Prossers filed notices of appeal

from the December 11, 2007, preliminary injunction.[2]

## II.  <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction to review this case pursuant to

Title 28 U.S.C. § 158(a).[3]  The Court will review the Bankruptcy

Division's findings of fact for clear error and will exercise

---

[2]  The Prossers timely filed their notices of appeal in
accordance with Federal Rule of Bankruptcy Procedure 8002(a),
which states that "notice of appeal shall be filed with the clerk
within 10 days of the date of the entry of the judgment, order,
or decree appealed from." Fed. R. Bankr. P. 8002(a).

[3]  Title 28 U.S.C. § 158(a) provides that "[t]he district
courts of the United States shall have jurisdiction to hear
appeals . . . of bankruptcy judges entered in cases and
proceedings referred to the bankruptcy judges under [28 U.S.C. §
157].  An appeal under this subsection shall be taken only to the
district court for the judicial district in which the bankruptcy
judge is serving." 28 U.S.C. § 158(a) (Lexis 2008).

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 6

plenary review over questions of law. *In re Barbel*, No. 01-221, 2004 U.S. Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004) ("A district court reviews the Bankruptcy Division's conclusions of law *de novo* but may only review findings of fact that are clearly erroneous.") (citing Fed. R. Bankr. P. 8013; *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 (7th Cir. 1988)), *aff'd* 183 Fed. Appx. 227 (3d Cir. 2006).

Courts use a three part standard to review a trial court's decision to grant a preliminary injunction:

> [F]indings of fact are reviewed for clear error . . . conclusions of law are evaluated under a plenary standard, and the ultimate decision to grant the preliminary injunction is reviewed for abuse of discretion.

*Rogers v. Corbett*, 460 F.3d 455, 459 (3d Cir. 2006); *see also Kos Pharmaceuticals, Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir. 2004) (explaining that "any . . . prerequisite to the issuance of an injunction . . . is reviewed according to the standard applicable to that particular determination" (quotation omitted)).

### III.  ANALYSIS

At issue in the Prossers' appeals is whether the Bankruptcy Division abused its discretion in issuing the preliminary injunction.

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 7

A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (quotation omitted); *see also Elsinore Shore Associates v. Local 54, Hotel Employees and Restaurant Employees Intern. Union*, 820 F.2d 62, 63 (3d Cir. 1987) (applying this test to an application for a preliminary injunction in the bankruptcy context).

## 1.  Likelihood of Success on the Merits

The Prossers argue that the Bankruptcy Division applied the wrong legal standard with respect to the first prong of the preliminary injunction analysis.  They contend that the court applied a *prima facie* standard rather than the likelihood of success on the merits standard.  According to the Prossers, the Bankruptcy Division clearly erred in finding a likelihood of success on the merits of the Turnover Action without a sufficient factual basis for such finding.  They assert that the Trustees presented no evidence at the preliminary injunction hearing to show that the Property is owned by the Estates as opposed to the Prossers.  The Court disagrees.

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 8

Pursuant to 11 U.S.C. § 542(a) ("Section 542(a)"):

Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (1994).

Under 11 U.S.C. § 541 ("Section 541"), commencement of a bankruptcy case creates an estate, which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* at § 541(a) (2005).[4] Section 541 is interpreted broadly. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). "It extends to property wherever located and by whomever held, and includes the Debtor's legal, equitable and possessory interests." *Matter of Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bkrtcy. D. Del. 1991) (citations and quotations omitted); *see also Inslaw, Inc.,* 932 F.2d at 1471 ("Th[e] estate . . . comprises property of the debtor wherever located and by whomever held, including (among other things) all legal or equitable interests of the debtor in property as of the commencement of the case." (quotation omitted)).

_____

[4] Property falling within the scope of  Section 541 is included as property of the estate unless it meets one of the statutory exceptions. *See* 11 U.S.C. § 541(b)-(d).

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 9

At the December 11, 2007, hearing, Byron Peter Smyl ("Smyl"), managing director with the International Restructuring Firm retained by Springel to perform accounting work for Innovative, testified on behalf of the Estates.[5]  Smyl stated that he had been given access to the books and records of Innovative, including records of the company's prior transactions.  During the hearing, counsel for Springel asked Smyl:

Q: Was there an investigation made of any payments that might have been to or for the benefit of Mr. Prosser or members of his family?

A: Yes.

Q: And, specifically, did you find any evidence to that effect?

A: Yes, we have.

Q: Would that have included any evidence with respect to his wife, Ms. Dawn Prosser?

A: Yes.

Q: Now, did you see in your review of the books and records and your other investigation, that Ms. Prosser had been employed by [Innovative] at any time?

A: No.

Q: Nonetheless, did you see evidence that Ms. Prosser received any type of remuneration, whether it be in dollars

---

[5] Technically, the evidence presented at the December 11, 2007, hearing was offered by Springel.  However, the Springel's counsel stated at the hearing that he was speaking on behalf of Carroll in order to be more efficient.

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 10

or in goods or in the ability to charge product at third
party vendors?

A: Yes.

. . .

THE WITNESS: We found evidence of items that have been paid
for by [Innovative], from their party vendors, that appear
to be a direct benefit to Ms. Prosser.

Q: With respect to your investigation what, if anything, did
you find that would have demonstrated a business
justification for any purchases that may have been made by
or on behalf of Mrs. Prosser?

A: We have not found any.

(Hr'g Tr. 96, Dec. 11, 2007.)

The Trustees introduced a statement of financial affairs for
Jeffrey J. Prosser, which listed figures representing his gross
income.  Smyl testified that neither he nor his staff was able to
reconcile the expenditures described above with the amounts of
gross income Jeffrey J. Prosser claimed on his statement of
financial affairs.  Further, the Estates presented inventories
and schedules listing the personal property of Jeffrey J. Prosser
and of Dawn Prosser.  Syml testified that he was able to identify
several items on the schedules that were purchased using
Innovative's funds, including artwork and jewelry.  Syml also
stated that all of the items listed on Dawn Prosser's schedules
were claimed to be gifts.  Additionally, the Estates presented
several invoices, check summaries, and billing statements they

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 11

claimed to be related to the acquisition or insurance of the

Property at the heart of the Turnover Action.  The Prossers

presented no evidence and called no witnesses at the December 11,

2007, hearing.

    At the end of the hearing, the bankruptcy judge stated

> I have seen evidence on the record today that there are
> assets that were purchased in the name of Jeffrey Prosser
> that were paid for by a corporation which is a debtor in
> bankruptcy and that is not Mr. Prosser that ended up in the
> care custody possession and control of Mr. Prosser or Mrs.
> Prosser or both of them.  Mrs. Prosser is not a debtor.

(*Id.* at 156-57.)  The judge continued to explain that

> the Trustee has at least raised a colorable prima facie case
> that an awful lot of these assets should have belonged to
> [Innovative].  They may be being used by the Prossers at
> some point for some reason, but it doesn't seem as though
> looking at the origination of where the payments came from
> compared to where the bills went to, how they were listed,
> in the name of Mr. Prosser, not Mrs. Prosser and the
> payments coming from [Innovative] in many instances or
> Atlantic Telenetwork that they should somehow or other ended
> up either in the home or in Mrs. Prosser's care custody,
> control, possession or ownership. However you want to put
> it. . . .  And I think one estate or the other has a claim
> to many of these assets.

(*Id.* at 152-53.)  Ultimately, the judge concluded that

> there's a very good likelihood that one estate or the other
> will recover.
>
>                         . . .
>
> [O]ne or the other of the[] [Estates] . . . has shown a
> likelihood that these assets will belong to one or the other
> of the entities.

(*Id.* at 154, 157.)

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 12

In light of the evidence presented at the December 11, 2007, hearing suggesting that either Innovative or Jeffrey Prosser paid for the Property, the Bankruptcy Division's finding that the Trustees had a likelihood of success on the merits of their Turnover Action was not clearly erroneous.

**2.    Risk of Irreparable Harm to the Trustees**

Next, the Prossers argue that the Bankruptcy Division erred in finding that the Trustees would face irreparable harm absent a preliminary injunction.  The Prossers assert that the Trustees presented no evidence that would support a finding that they would be unable to pay money damages.

In order for a moving party to satisfy its burden of showing irreparable harm, it must demonstrate "clear showing of immediate irreparable injury, or a presently existing actual threat." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (quoting *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976)). Additionally, the harm must be "imminent." *Punnett v. Carter*, 621 F.2d 578, 587 (3d Cir. 1980).  It must not be speculative and cannot "occur in some indefinite future." *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 488 (3d Cir. 2000).  The nature of the harm must be such that money damages alone cannot atone for it. *Kos Pharmaceuticals, Inc.*, 369 F.3d at 727-28 (quoting *Pappan*

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 13

*Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d

Cir. 1998)).

At the December 11, 2007, preliminary injunction hearing,

the Trustees presented evidence that the Property consisted of

items such as cash, wine, household goods and furnishings,

clothing, electronic equipment, antiques, flatware, various items

purchased from department stores, art, jewelry, vehicles, boats,

sporting equipment, securities, and tickets to sporting events.

The bankruptcy judge acknowledged that, with respect to

> assets that are able to be sold that can be traded on an
> open market or in a private sale . . . there is a basis to
> continue a preliminary injunction in effect.

(Hr'g Tr. 158, Dec. 11, 2007.).  Additionally, the Trustees

offered Jeffrey J. Prosser's statement of financial affairs and

schedules thereto, showing that his liabilities far exceeded his

assets for the relevant dates in 2006 and 2007.

In the written preliminary injunction order, the Bankruptcy

Division found that "[b]y its nature, much of the Property can be

easily spent, hidden, disposed of, or potentially transported out

of this Court's Jurisdiction." (Order ¶ R, Bankr. No. 2007-30012,

Dec. 11, 2007.)  The court also explained that the Prossers

failed to turn over the Property to the Trustees, despite

numerous requests to do so.  The judge concluded that

> [i]f injunctive relief is not granted, the Estates risk
> immediate and irreparable injury for which there is not an

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 14

adequate remedy at law because the Property can be easily
consumed, removed from the jurisdiction of this Court, or
otherwise spent or disposed of before trial on the merits,
Jeff Prosser would be unable to respond in damages because
he is in bankruptcy, and the other Defendants also appear to
lack sufficient assets to satisfy a money judgment.

(*Id*. at ¶ U.)

The evidence presented at the December 11, 2007, hearing
revealed that the vast majority of the Property in question is
the sort that could be easily disposed of or spirited out of this
jurisdiction.  The evidence also showed the financial insolvency
of Jeffrey J. Prosser.  Based on that evidence, the finding of
the Bankruptcy Division that the Trustees faced irreparable harm
absent preliminary injunctive relief was not clearly erroneous.
*See, e.g, Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*,
222 F.3d 132, 140-41 (3d Cir. 2000) (holding that the potential
dissipation of  Perishable Agriculture Commodities Act (PACA)
trust assets constituted a risk of irreparable harm for purposes
of preliminary injunctive relief because, absent such relief,
ultimate recovery was rendered unlikely); *FDIC v. Garner,* 125
F.3d 1272, 1279-80 (9th Cir. 1997) (giving "substantial
deference" to the lower court's finding that there was "at least
a possibility" of dissipation of assets absent an asset-freezing
injunction, and consequently concluding that the possibility of
irreparable injury had been adequately demonstrated); *Matter of*

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 15

*Freedom Group, Inc.,* 50 F.3d 408, 411 (7 th Cir. 1995)

(acknowledging the "irreparable harm that will ensue if the

debtor dissipates funds needed to pay the creditor"); *In re*

*Newman*, 6 B.R. 798, 802-03 (Bkrtcy. S.D.N.Y. 1980) ("[T]he

trustee has demonstrated that the estate may suffer irreparable

injury, the dissipation of the funds, if the injunction is not

imposed.").

### 3.   Risk of Irreparable Harm to the Prossers

The Prossers further contend that the Bankruptcy Division

erred in finding that the issuance of the preliminary injunction

would not place them at risk of irreparable harm.  However, the

third prong of the preliminary injunction inquiry is not whether

the non-movants would face no risk of irreparable harm if the

injunction were issued.  The appropriate inquiry is whether

"granting preliminary relief will not result in even greater harm

to the nonmoving party . . . ." *Child Evangelism Fellowship of*

*N.J., Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d

Cir. 2004).  Accordingly, the Bankruptcy Division was not

required to find that the Prossers would face no risk of

irreparable injury if the injunction were issued.  Rather, the

court needed to find that granting the preliminary injunction

would not result in a greater risk of irreparable harm to the

Prossers than the Trustees would face absent the injunction.

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 16

As discussed above, the Trustees presented evidence at the December 11, 2007, hearing to support a finding that the Trustees would have faced a clear risk of irreparable injury if the injunction were not issued.  Moreover, the Prossers presented no evidence to suggest that they would face any risk of irreparable harm if the preliminary injunction was granted.  As such, the Bankruptcy Division found that

> [t]he injury resulting from the conduct sought to be enjoined far outweighs any potential harm that would be suffered by the Defendants . . . if the requested injunction is issued as the Property may be consumed or disposed of in the absence of injunctive relief whereas it will still be available to the Defendants should they ultimately prevail on the merits.

(Order ¶ V, Bankr. No. 2007-30012, Dec. 11, 2007.)  That finding was supported by the evidence in the record, and was not clearly erroneous.

### 4.    Public Interest

The Prossers also claim that the Bankruptcy Division erred in finding that the public interest favored granting the injunction.  Because the private creditors of Innovative and Jeffrey J. Prosser voluntarily agreed to advance funds, the Prossers argue, they should not now be able to tie up the assets of private individuals through the underlying Turnover Action. The Court is not persuaded by the Prossers' argument.

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 17

The Bankruptcy Division found that "public interest favors the granting of injunctive relief because the requested relief protects the Estates and their creditors from tortious and wrongful conduct by the Defendants while preserving the Property for the ultimate prevailing party." (*Id.* at ¶ W.)   This Court agrees that the public interest favors preserving the status quo until this matter is resolved on the merits.  The preliminary injunction safeguards the Property at the heart of the Turnover Action for the benefit of the prevailing party.  In contrast, if preliminary injunctive relief were denied and the Property was disposed of, the Trustees would be without a remedy if they ultimately won on the merits their claims.

Additionally, the Court finds that the issuance of the preliminary injunction serves the public interest in preventing debtors in bankruptcy from moving their assets away from the reach of their creditors.  Indeed, the preliminary injunction aims to ensure that the Property belonging to the Estates is turned over in an effort to maximize the value to the creditors. Accordingly, the Bankruptcy Division did not err in finding that granting the injunction would best serve the public interest. *Cf. In re Poole*, 15 B.R. 422, 434 (Bkrtcy. N.D. Ohio 1981) ("[T]he public interest . . . in . . . prevent[ing] debtors from placing their property beyond the reach of their creditors to the

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 18

prejudice of their creditors' legal and equitable rights, will most adequately be served by the Court acting to preserve the status quo in this lawsuit until decision on the merits is rendered.").

###    5.    Specificity

Next, the Prossers argue that the preliminary injunction must fail for lack of specificity.  They claim that the injunction applies to "the Property," but complains that Bankruptcy Division failed to define the term "Property."

"It is true that injunctions and restraining orders must give fair notice of the conduct that is prohibited." *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1150, 1156 (3rd Cir. 1982); *see also* Fed. R. Civ. P. 65(d) (2007) ("Rule 65(d)") ("Every order granting an injunction . . . must . . . state its terms specifically; and . . . describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.").  Indeed, "[t]he party constrained is entitled to 'fair and precisely drawn notice of what the injunction actually prohibits' because serious consequences may befall those who do not comply with court orders." *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 444, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974)); *see also*

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 19

*United States v. Schiavo,* 504 F.2d 1, 8 n.17 (3d Cir. 1974)

("Rule 65(d) reflects the clear policy that parties bound by

restraining orders should be informed exactly what conduct is

sought to be restrained."). "All that is required under [Rule]

65(d) is for the language of the injunction to be as specific as

possible under the totality of the circumstances, such that a

reasonable person could understand what conduct is proscribed."

*Medtronic, Inc. v. Benda*, 689 F.2d 645, 649 (7th Cir.1982), *cert.*

*denied*, 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983).

"Broad, non-specific language that merely enjoins a party to obey

the law or comply with an agreement, however, does not give the

restrained party fair notice of what conduct will risk contempt."

*Louis W. Epstein Family P'ship*, 13 F.3d at 771.

Here, the order granting the preliminary injunction states

that, "[w]hile an officer and director of [Innovative], Jeff

Prosser used his own funds and/or directed [Innovative] to use

its funds to acquire property . . . for the benefit of himself

and/or the other Defendants," and defines such property as the

"Acquired Property." (Order ¶ M, Bankr. No. 2007-30012, Dec. 11,

2007.)  The order explains that the "Acquired Property" includes,

but is not limited to: "jewelry, art, automobiles, personal water

craft, wine, silverware, negotiable and non-negotiable

securities, season tickets to sporting events and related seat

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 20

licenses, country club memberships, clothing, rugs, furniture,

antiques, and other home furnishings and luxury goods . . . ."

(*Id.*)  Additionally, the order states that "Jeff Prosser caused

[Innovative] to pay the premiums associated with the insurance of

certain real and personal property possessed by the Defendants,"

and defines such property as the "Insured Property." (*Id.* at ¶

N.)  Contrary to the Prossers' assertion, the preliminary

injunction order then defines the term "Property" as the Acquired

Property together with the Insured Property.  The order also

explains that "[t]he Property is currently in the possession,

custody, or control of one or more of the Defendants." (*Id.* at ¶

P.)

The preliminary injunction order then mandates:

To the extent that they have no previously done so as
required by prior Court Order, the Defendants shall provide
the Trustees with a complete and detailed inventory of all
Property of which they have knowledge, possession, and
control (the "<u>Itemized List</u>") by no later than December 17,
2007.  The Itemized List shall include an accurate
description of all Property, the current location of all
Property, the estimated value of all Property, the source of
all funds utilized to purchase the Property, and the name(s)
of any person or entity other then the Trustees and the
Estates who has possession of, or claims an ownership
interest in, any of the Property.

The Defendants shall keep the Property in secure
locations and protect the Property from destruction, damage,
modification, theft, removal, or transfer, pending its
turnover to the Trustees.  The Defendants shall safeguard
the Property and shall not spend, consume, damage, dispose
of, sequester, abscond with, secrete, or transfer the

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 21

Property in any form whatsoever without prior written approval obtained from both Trustees, pending further Order of the Court.

(*Id.* at ¶ 1-2.)

Although the preliminary injunction order is not drawn in terms of specific items of property, it does give clear notice to the Prossers that they must inventory, safeguard, and refrain from consuming or otherwise disposing of any property in their custody or control that was acquired with, or has been insured using, Innovative's funds. Given the number of defendants, the amount of property involved, and the embryonic stage of the litigation, the Court could not have realistically framed a more specific order. Under these circumstances, the December 11, 2007, preliminary injunction order is sufficiently specific. *See, e.g., Kremen v. Blank*, 55 B.R. 1018, 1022-23 (D. Md. 1985) (upholding an injunction forbidding the debtor and other defendants from "releasing, assigning, transfer[r]ing, collecting, or encumbering property of the Bankrupt Estate" because "[a] sweeping injunction was clearly necessary to protect the assets of the bankrupt's estate"); *cf. In re Arthur Treacher's Franchisee Litigation*, 689 F.2d at 1156 (holding that an injunction that prohibited "any . . . action which hinders or impedes the operation of [the movant's] business," including

Prosser v. Springel
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 22

"interfering with [the movant's] sources of supply. . . ."

provided sufficiently clear notice of the proscribed conduct).

### 6. Relief Requested

Finally, the Prossers argue that the preliminary injunction is overly broad because it exceeds the relief requested by the Trustees. Specifically, they contend that the Trustees sought injunctive relief only with respect to the "Acquired Property," while the preliminary injunction applied to both "Acquired Property" and "Insured Property." That argument is unsupported by the record. The relief requested in the Trustees' verified complaint and application for a preliminary injunction applied to all "Property." Like the December 11, 2007, order, the Trustees' complaint and application for injunctive relief defined the term "Property" as including both "Acquired Property" and "Insured Property." The definitions of "Acquired Property" and "Insured Property" in the complaint and application for a preliminary injunction were also the same the definitions for those terms in the December 11, 2007, order. Accordingly, the preliminary injunction does not exceed the relief requested by the Trustees.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the Bankruptcy Division did not abuse its discretion in issuing the December 11, 2007, preliminary injunction order. That order

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Memorandum Opinion
Page 23

extends only as far as required to preserve the value of the

Estates pending the June, 2008, trial on the merits of the

Turnover Action.  Such relief is necessary to prevent the

dissipation of the Property until the Bankruptcy Division has an

opportunity to determine which items of Property are owned by the

Estates.  Accordingly, the Court will affirm the December 11,

2007, preliminary injunction order.  An appropriate Order

follows.


                              S_____
                                   **Curtis V. Gómez**
                                    **Chief Judge**

FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

```
                                )
                                )
JEFFREY J. PROSSER, DAWN        )     Civil No. 2008-16
PROSSER, SYBIL G. PROSSER,      )               2008-18
JUSTIN PROSSER, MICHELLE        )
LABENNETT, and LYNDON A.        )     Re: Bankr. No. 07-30012
PROSSER,                        )     Adv. Proc. No. 07-03010
                                )
              Appellants,       )
                                )
         v.                     )
                                )
STAN SPRINGEL,                  )
                                )
              Appellee.         )
                                )
_____ )
```

APPEARANCES:

**Karin A. Bentz, Esq.**
St. Thomas, U.S.V.I.
  *For Dawn Prosser,*

**Alan E Pedersen, Esq.**
Omaha, NE
  *For Justin Prosser, Sybil G. Prosser, Michelle LaBennett,*
  *and Lyndon A. Prosser,*

**Mark W. Eckard, Esq.**
St. Croix, U.S.V.I.
  *For Jeffrey J. Prosser,*

**Andrew Kamensky, Esq.**
Miami, FL
  *For Stan Springel.*

<u>ORDER</u>

**GÓMEZ, C.J.**

Before the Court are the appeals of Dawn Prosser, Lyndon A.,

*Prosser v. Springel*
Civil No. 2008-16, Civil No. 2008-18
Order
Page 2

Prosser, Justin, Prosser, Sybil G.Prosser, Michelle LaBennett

(the "Prossers") from the Bankruptcy Division's December 11,

2007, order for a preliminary injunction.  For the reasons more

fully stated in the Memorandum Opinion of even date, it is hereby

     **ORDERED** that the Bankruptcy Division's December 11, 2007,

order is **AFFIRMED**.




          S_____

               **CURTIS V. GÓMEZ**
                **Chief Judge**